IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VIOLA JONES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 03 C 9306 |
| v. | ) |
| | ) Mag. Judge Michael T. Mason |
| JO ANNE BARNHART, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Michael T. Mason, United States Magistrate Judge:

Plaintiff, Viola Jones ("Jones" or "claimant"), has brought a motion for summary judgment seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied Jones' claim for Supplemental Security Income ("SSI") benefits under the Social Security Act, 42 U.S.C. § 1381a (2000). The Commissioner filed a cross-motion for summary judgment asking that we uphold the decision of the Administrative Law Judge ("ALJ"). We have jurisdiction to hear this matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the following reasons, we grant Jones' motion, deny the Commissioner's motion and remand this case for further proceedings consistent with the opinion.

## BACKGROUND

**Procedural History**

Jones filed an application for SSI benefits on March 13, 2001, alleging a disability onset date of March 8, 1999. Her application was denied initially in June 2001 and again

in November 2001 after a timely request for reconsideration. Thereafter, Jones requested a hearing before an ALJ. On June 3, 2003, Jones testified at a hearing conducted by ALJ Alfred Burton ("ALJ Burton"). ALJ Burton issued a written decision on June 26, 2003 denying Jones SSI benefits. The Appeals Council subsequently denied Jones' request for review on November 5, 2003, and ALJ Burton's decision became the final decision of the Commissioner. *Estok v. Apfel*, 152 F.3d 636, 637 (7th Cir. 1998); 20 C.F.R. § 416.1481.

**Claimant's Testimony**

At the time of the hearing, Viola Jones was a forty year-old woman with three children. (R. 22). She has a twelfth-grade education and no specialized vocational training. (R. 33). Ms. Jones testified that her most recent job consisted of making photocopies as a parent volunteer for the Board of Education on an as-needed basis. (R. 22-23). She received a $90 stipend every two weeks in exchange for twelve hours of work per week. (R. 23). She performed this work on and off for a couple of years until June 2002. *Id.* Jones has had no other employment since filing her application for benefits.

Jones testified that on March 8, 1999, she slipped and fell on a patch of ice and broke her ankle. (R. 23-23). Dr. Charles Mercier performed ankle surgery on Jones on March 13, 1999 at St. Joseph's Hospital in Chicago. (R. 25). She continued to see Dr. Mercier for frequent follow-up appointments until some time in August 1999. *Id.* Jones testified that she saw Dr. Lasquite, her primary care physician at the Lakeside Medical Center in Chicago, both before and after her accident. *Id.* She also saw Dr. Mok for pain and pain-related medication. (R. 26).

Jones continued to complain of pain and swelling in her right ankle, even three to

four years after her surgery, and claimed to wear an Ace bandage on her ankle. (R. 27). She testified that Drs. Mok and Lasquite told her to keep her ankle elevated to hip level, to stay off her feet as much as possible, and to take pain medication to alleviate her symptoms. *Id.*

On various Social Security Disability Report forms and in her request for a hearing, Jones indicated that she needs to elevate her leg and that she still experiences pain and swelling from walking, standing or climbing stairs. (R. 106, 115, 122, 125, 131). Jones further stated that she took both over-the-counter and prescription strength Motrin and Tylenol with codeine for pain. (R. 123, 124, 127, 130). Finally, Jones claimed that she can no longer run, that she has difficulty putting on her shoe, walking, climbing stairs and that she stumbles a lot when walking. (R. 106, 115, 122).

**Medical Evidence**

### A. *Dr. William Newman, Medical Examiner*

Dr. William Newman testified that Jones' post-traumatic arthritis of the ankle did qualify as a severe impairment. (R. 28). However, he also testified that the impairment did not constitute a listing-level impairment under section 1.02a of 20 C.F.R. Subpart P, Appendix 1.[1] *Id.* According to Dr. Newman, the x-ray showed "narrowing" of the joint, and some degenerative arthritis in her ankle. *Id.* Dr. Newman opined that because Ms. Jones was "overweight" and had some arthritis, her functioning was somewhat limited. (R. 29). She could stand for three to four hours out of an eight hour day but had no restrictions on the amount she could lift. (R. 29-30). If Jones had to stand for a long period of time, Dr.

---

[1] A listing-level impairment is an impairment that the Commissioner considers conclusively disabling under section 1.02a of 20 C.F.R. Subpart P, Appendix 1.

3

Newman thought she probably would experience some swelling in her ankle. (R. 30-31). He remarked that "bearing weight on the arthritic joint would cause irritation and some swelling . . . [and he] wouldn't be surprised if there was some swelling at times." (R. 31). Therefore, Dr. Newman recommended a limitation on standing for three to four hours a day for a maximum of one hour at a time. (R. 28, 31).

Dr. Newman also testified about the results of Jones' consultation with Dr. Paul Belich on March 18, 2003. (R. 29). Dr. Belich found no swelling in Jones' right ankle and he found that she had a normal range of motion in her ankle. *Id.* Dr. Newman also noted that there was no indication in the record from any treating source that elevating her leg to hip level was recommended, or even medically necessary. (R. 36). None of the treating physicians even mentioned elevation or treatment devices like elastic stockings. *Id.*

Dr. Newman concluded that the degree of pain Jones complained about was not explained by the file. (R. 33). He conceded that there might be something else there and he indicated that he would not say that Jones did not have the pain. *Id.* However, according to Dr. Newman, the evidence he reviewed did not support the degree of pain that Jones claimed. *Id.*

### B. Other Medical Evidence

Dr. Charles Mercier of St. Joseph's Hospital performed Jones' ankle surgery on March 13, 1999, and saw Jones thereafter to evaluate her progress. (R. 25). He regularly sent letters to the Lakeside Medical Center, where Jones' primary care physician practiced, to provide updates on Jones' condition and recommendations for her future treatment. (R. 133, 135, 137, 139). Dr. Mercier noted that Jones' pain and swelling decreased or

improved with each successive visit. *Id.* By June 1999, Jones' x-rays revealed satisfactory position of the fracture with healing and she could walk without crutches, bearing weight on her ankle as tolerated. (R. 133).

Patrick Kelly, the State Disability Consultant, evaluated Jones on November 7, 2001. (R. 172-179). At the time, Jones was 5'2" tall and weighed 222 pounds. (R. 179). Kelly indicated that while Jones complained of pain when bearing weight on her foot, she could ambulate without assistance and reports showed a good range of motion in the ankle. *Id.* Kelly found that Jones was capable of medium duty work, including six to eight hours of standing or walking per day. *Id.*

Dr. Paul Belich performed a consultative exam on Jones on March 18, 2003. (R. 183-188). She complained of right ankle pain and swelling ever since her surgery. (R. 183). She also complained of pain and swelling of the left ankle. *Id.* Dr. Belich noted that Jones had a slow gait and a slight limp. (R. 184). He found a normal range of motion in her right ankle and no swelling. *Id.* Dr. Belich found that Jones' impairment did not affect her ability to stand, sit, walk, lift, carry, or push or pull objects. (R. 187-188).

Ms. Jones' medical records indicate that she is 5'2" tall, and has weighed over 200 pounds during all times relevant to this inquiry. (R. 152-161, 179, 181-182, 189-196). Additionally, medical records from Cermak Medical Center in 2001 and 2002 noted complaints of right ankle pain. (R. 189-196).

**Vocational Expert's Testimony**

Dr. Richard Hamersman testified that Ms. Jones had no past relevant work

experience.[2] (R. 33). He explained that in order to perform sedentary work, a person should be able to sit for about six hours a day, and stand or walk for up to two hours a day. (R. 34). Dr. Hamersman also testified that if Jones had to elevate her leg to hip level for thirty to sixty minutes per day, twice a day, she would be precluded from performing sedentary work. (R. 35).

## LEGAL ANALYSIS

### Standard of Review

We must affirm the ALJ's decision if it is supported by substantial evidence and free from legal error. 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is more than a scintilla of evidence and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz v. Chafer*, 55 F.3d 300, 305 (7th Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). We must consider the entire administrative record, but we will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner." *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (quoting *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)). We will "conduct a critical review of the evidence" and will not let the Commissioner's decision stand "if it lacks evidentiary support or an adequate discussion of the issues." *Id.* While the ALJ "must build an accurate and logical bridge from the evidence to [his] conclusion," he need not discuss every piece of evidence in the record. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). The ALJ must "sufficiently articulate [his] assessment of the evidence to 'assure us that the ALJ

---

[2] ALJ Burton's decision erroneously identifies the vocational expert as Lee Knutson. (R. 11).

considered the important evidence... [and to enable] us to trace the path of the ALJ's reasoning.'" *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (per curiam) (quoting *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985)).

**Analysis Under the Social Security Act**

Whether a claimant qualifies to receive SSI benefits depends on whether the claimant is "disabled" under the Social Security Act. A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). In determining whether a claimant is disabled, the ALJ must consider the following five-step inquiry: "(1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling ("a listing-level impairment"), (4) if the claimant does not have a conclusively disabling impairment, whether she can perform her past relevant work, and (5) whether the claimant is capable of performing any work in the national economy." *Dixon*, 270 F.3d at 1176. The claimant has the burden of establishing a disability at steps one through four. *Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001). If the claimant reaches step five, the burden then shifts to the Commissioner to show that "the claimant is capable of performing work in the national economy." *Id.* at 886.

The ALJ followed this five step analysis. The parties do not dispute step one of ALJ Burton's analysis. At step one, the ALJ found that Jones was not engaged in substantial

7

gainful activity and had not been engaged in substantial gainful activity since March 13, 2001. (R. 12).³ At step two, the ALJ found that Jones' post right ankle fracture with open reduction and internal fixation constituted a "severe impairment." (R. 12). However, we find that ALJ Burton stopped short in his analysis at this step. In 2002, the Social Security Administration ("SSA") issued a policy interpretation ruling which requires the ALJ to consider obesity in his disability determination at steps 2, 3, 4, and 5. SSR 02-1p, *available at* 2000 WL 628049 (S.S.A.), at *1. We find that ALJ Burton failed to consider Jones' alleged obesity at step two or at any stage of the analysis, nor did he articulate how that factor affected his decision, as he is required to do. (R. 11-15); *Steele*, 290 F.3d at 941.

### The ALJ's Failure to Consider Jones' Alleged Obesity

The SSA issued Policy Interpretation Ruling SSR 02-1p to clarify the role of obesity in ascertaining whether an individual is disabled. SSR 02-1p, 2000 WL 628049, *3. The SSA declared that all adjudicators at all levels of administrative review should consider obesity in determining whether an individual has a medically determinable impairment and whether the impairment is severe. SSR 02-1p, 2000 WL 628049, *3. While obesity is no longer considered a listing-level impairment, it may be considered a medically determinable impairment capable of affecting a claimant's disability determination, either by itself or in conjunction with other impairments. SSR 02-1p, 2000 WL 628049, *1. Indeed, the policy ruling specifically states that "the combined effects of obesity with other impairments can

---

³ Jones contends that her disability onset date was March 8, 1999. ALJ Burton noted that no retroactive benefits are payable under Title XVI. 20 CFR 416.335. Thus, the ALJ properly decided the issue of disability only with respect to the period since March 13, 2001, the protective application filing date. (R. 11-12).

8

be greater than the effects of each of the impairments considered separately." *Id.* Furthermore, and particularly relevant here, the SSA indicated that "someone with obesity and arthritis affecting a weight bearing joint may have more pain and limitation than might be expected from the arthritis alone." *Id.* at *6.

At the hearing before ALJ Burton, Dr. Newman testified that Jones' work capacity should be limited because, in combination with the arthritis in her ankle, she was also overweight. (R. 29). The ALJ did not ask Dr. Newman about Jones' alleged obesity despite the fact that Jones' attorney argued that her obesity should be taken into consideration. (R. 21). Even if a medical examiner ("M.E.") has not diagnosed the claimant as obese, but clinical notes or other medical records indicate that the claimant has a consistently high body weight or BMI (body mass index), the ALJ may indeed probe the M.E. to clarify whether the claimant is obese. SSR 02-1p, 2000 WL 628049, at *3. However, in most cases of this type, the ALJ will use his judgment "to establish the presence of obesity based on the medical findings and other evidence in the case record, *even if a treating or examining source has not indicated a diagnosis of obesity.*" *Id.* (emphasis added).

Here, Jones' medical records indicate that she is 5'2" and consistently has weighed over 200 pounds during all times relevant to this inquiry. (R. 152-161, 179, 181-182, 189-196). This suggests that Jones may indeed be clinically obese. *See* SSR 02-1p, 2000 WL 628049, *2. Obesity is considered a severe impairment when, alone or in combination with another medically determinable physical or mental impairment, it significantly limits an individual's physical or mental ability to do basic work activities. *Id.* at *4. In order to determine whether Jones' alleged obesity was a severe impairment for purposes of his

9

step two analysis, ALJ Burton should have conducted an individualized assessment of the impact of the alleged obesity on Jones' functioning. *Id.* He failed to do so or at the very least, he failed to articulate such an assessment in his opinion. (R. 11-15).

We do not substitute our judgment for ALJ Burton's judgment by insisting that Jones is *in fact* obese and her impairments severe. See *Estok*, 152 F.3d at 638. That is for the ALJ to determine. However, we are prevented from offering a meaningful review of ALJ Burton's conclusion on the existence and severity of Jones' impairments because he failed to weigh the evidence relating to Jones' alleged obesity or exercise his judgment in accordance with SSR 02-1p's guidelines. *Blakes v. Barnhart*, 331 F.3d 565, 569 (N.D. Ill. 2003); *Denham v. Barnhart*, 2004 WL 1699021, at *6 (N.D. Ill. 2004) (recognizing that the ALJ erred in failing to analyze the claimant's alleged obesity). ALJ Burton failed to build a "logical bridge" between the evidence he considered and his apparent conclusion that Jones' alleged obesity does not constitute a severe impairment at step two. *Blakes*, 331 F.3d at 569; *Steele*, 290 F.3d at 941. Indeed, there is no mention of Jones' weight in the entire opinion. (R. 11-15).

The Commissioner argues that ALJ Burton incorporated Dr. Newman's opinion by reference. However, Dr. Newman only considered Jones to be "overweight" and did not offer any other evidence with respect to whether or not he considered Jones to be obese. (R. 29). Regardless of Dr. Newman's opinion, the ALJ cannot expect the claimant or this Court to draw inferences so that he may evade his affirmative responsibility to demonstrate the reasoning behind his conclusion. See *Young v. Barnhart*, 282 F. Supp. 2d 890, 896 (N.D. Ill. 2003); *Blakes*, 331 F.3d at 569.

Furthermore, pursuant to SSR 02-1p, the ALJ also must consider whether obesity contributes to finding a listing-level impairment at step three, whether it affects the residual functional capacity (RFC) assessment at step four, and whether it prevents an individual from working in the national economy at step five. SSR 02-1p, 2000 WL 628049, *3. ALJ's Burton's opinion does not discuss obesity at any of these steps. Simply put, the ALJ has not sufficiently articulated his assessment of the evidence to assure us that he considered the important evidence nor does the ALJ's opinion enable us to trace the path of his reasoning as it relates to the issue of obesity. ALJ Burton's failure to consider and discuss Jones' alleged obesity at steps two through five is a sufficient reason to remand the case. *Young*, 282 F. Supp. 2d at 896 (court remanded the case because the ALJ failed to discuss obesity as a factor in determining whether or not the combination of impairments constituted a listing-level impairment at step three).

**The ALJ's Credibility Determination**

Jones contends that the ALJ's credibility determination was not supported by the evidence. To succeed on this ground, Jones must overcome the highly deferential standard that we accord credibility determinations. Because the ALJ is best positioned to evaluate the credibility of a witness, we reverse the ALJ's credibility finding only if it is "patently wrong." *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). However, when questioning the claimant's credibility as to symptoms of pain, the ALJ must follow the specific requirements set forth in SSR 96-7p. SSR 96-7p, *available at* 1996 WL 374186 (S.S.A.).

SSR 96-7p requires the ALJ to consider whether there is an underlying

11

"determinable physical or mental impairment that could reasonably be expected to produce the symptoms." *Id.* at *1; *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004). Once this has been established, the ALJ must further evaluate the "intensity, persistence, and functionally limiting effects of the symptoms" in order to determine whether those symptoms "affect the individual's ability to do basic work activities." *Id.* The ALJ then considers the credibility of the claimant in light of "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record." *Id.*

Here, Jones' ankle injury constitutes an impairment that could reasonably be expected to produce the symptoms she described. ALJ Burton recognized this in his opinion. Therefore, the ALJ was required to determine if Jones' symptoms affected her ability to do basic work activities. SSR 96-7p, 1996 WL 374186, *1. ALJ Burton was also required to assess Jones' credibility in light of the entire case record. *Id.* In his opinion, the ALJ described in detail those pieces of medical evidence he found to be inconsistent with Jones' complaints of pain. (R. 13). He discussed the medical records from Jones' surgery and follow-up treatment with Dr. Mercier which indicated that her ankle was healing well, her prognosis was good, the swelling continually decreased, and the pain consistently improved over time. *Id.* The ALJ also found that despite the complaints of ankle pain in the Cermak Medical Center records, there was no evidence to support Jones' claims of disabling pain or the continued need to elevate her leg. *Id.* Additionally, ALJ Burton

considered Dr. Newman's testimony, Dr. Belich's consultation, and the evaluation by Mr. Kelly, the State Disability Determiner. *Id.*

Nevertheless, the ALJ may not discredit a claimant's subjective complaints of severe pain simply because they are not supported by objective evidence. SSR 96-7p, 1996 WL 374186, *1; *Carradine v. Barnhart*, 360 F.3d 751, 753 (7th Cir. 2004). In accordance with SSR 96-7p, when assessing the credibility of an individual's statements, the ALJ must consider the following in evaluating Jones' reported symptoms: Jones' daily activities; the location, duration, frequency, and intensity of her symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication; her course of treatment; any measures other than treatment that Jones uses or has used to relieve her symptoms; and any other factors concerning her functional limitations and restrictions due to her pain or other symptoms. SSR 96-7p, 1996 WL 374186, *3.

There is nothing in the opinion to demonstrate that ALJ Burton considered the type, dosage, effectiveness, and/or side effects of medication taken by Jones. (R. 11-15). The record shows that Jones took both over-the-counter and prescription strength Motrin and Tylenol with codeine for pain. (R. 123, 124, 127, 130). Further, the record demonstrates that Jones claimed that she has difficulty putting on her shoe, walking, climbing stairs and she stumbles a lot when walking. (R. 106, 115, 122). She also indicated that she needs to elevate her leg and that she still experiences pain and swelling from walking, standing or climbing stairs. (R. 106, 115, 122, 125, 131). However, ALJ Burton failed to discuss Jones' daily activities, the location, duration, frequency, and intensity of her symptoms or any precipitating and aggravating factors. (R. 11-15). Additionally, again, the ALJ completely ignored Jones' alleged obesity. *Id.* ALJ Burton failed to demonstrate that he

13

took into account Jones' weight when considering her subjective complaints of pain. *Id.*

Based on the foregoing, we find that ALJ Burton improperly discredited Jones' subjective complaints of pain solely because they were not supported by objective evidence. *Carradine*, 360 F.3d at 753. He also failed to assess the credibility of Jones' complaints of pain in accordance with the specific requirements set forth in SSR 96-7p. Accordingly, we lack a sufficient basis to sustain the ALJ's credibility determination and remand is appropriate. *Brindisi v. Barnhart*, 315 F.3d 783, 787 (7th Cir. 2003) (case was remanded because the ALJ failed to comply with the requirements of SSR 96-7p). On remand, the ALJ must reevaluate Jones' complaints of pain in accordance with SSR 96-7p.

**CONCLUSION**

ALJ Burton failed to consider and discuss Jones' alleged obesity at steps two through five of his analysis. Furthermore, he failed to assess the credibility of Jones' complaints of pain and her alleged limitations in accordance with the specific requirements set forth in SSR 96-7p. For these reasons and those set forth above, we find that the ALJ failed to build an accurate and logical bridge between the record evidence and his conclusions that: (1) Jones has an impairment or combination of impairments considered to be severe; (2) that the impairment or combined impairments do not meet or equal a listing-level impairment; (3) that Jones has the RFC to perform a full range of sedentary work; and (4) that Jones' complaints of pain and alleged limitations are not fully credible. Accordingly, Jones' motion for summary judgment is granted and the Commissioner's motion for summary judgment is denied. This case is remanded to the Social Security

Administration for further proceedings consistent with this opinion. It is so ordered.

ENTER:

MICHAEL T. MASON
United Stated Magistrate Judge

Dated: April 11, 2005